**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMMED JIBRIL, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )   Case No. 1:19-cv-2457-RCL |
| | ) |
| CHAD WOLF, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

On August 13, 2019, plaintiffs Mohammed Jibril and Aida Shahin (individually and on

behalf of their minor children H.J., Y.J., and O.J.), Ala'a Jibril, and Khalid Jibril brought suit

against defendants Chad Wolf (in his official capacity as Acting Secretary of the Department of

Homeland Security),[1] David Pekoske (in his official capacity as Administrator of the

Transportation Security Administration), Mark Morgan (in his official capacity as Acting

Commissioner of U.S. Customs and Border Protection), William Barr (in his official capacity as

U.S. Attorney General), Christopher Wray (in his official capacity as Director of the Federal

Bureau of Investigation), and Charles Kable, IV (in his official capacity as Director of the

Terrorist Screening Center). ECF No. 1 at 3-4. On November 25, 2019, defendants filed a motion

to dismiss. Upon consideration of the motion (ECF No. 8), opposition (ECF No. 9), and reply

(ECF No. 10), the Court will **GRANT** the motion and dismiss the case with prejudice due to lack

of subject-matter jurisdiction.

---

[1] The Complaint initially named Kevin McAleen, who was the Acting Secretary of the Department of Homeland Security at the time. ECF No. 1 at 1.

**BACKGROUND**[2]

Plaintiffs are seven members of the Jibril family, all of whom are U.S. citizens. ECF No. 1 at 13. In the spring and summer of 2018, the Jibril family traveled to Jordan to visit family members. *Id.* They departed from Los Angeles, California, connected in Abu Dhabi, United Arab Emirates, and landed in Amman, Jordan, where they stayed for over two months. *Id.* When they arrived in Los Angeles, they waited an hour to receive their boarding passes, all of which had "SSSS" printed on them. *Id.* The family was then searched for about two hours, and all seven of them were patted down. *Id.* Neither parent was asked for permission before the minor children were searched. *Id.* When they arrived at their boarding gate, they were met by Department of Homeland Security ("DHS") agents and taken to a private area where agents searched their luggage. *Id.* This nearly caused the family to miss their flight to Abu Dhabi. *Id.* When the Jibrils arrived in Jordan, they were interrogated for about two hours. *Id.*

After being in Jordan for approximately two months, the Jibrils departed in August of 2018. *Id.* at 14. At the airport in Jordan, Mohammed Jibril was told that American officials had an issue with him, and all family members' names would need to be cleared prior to boarding the plane. *Id.* All family members had "SSSS" printed on the boarding passes they eventually received. *Id.* When they arrived in Abu Dhabi, they were interrogated for roughly 45 minutes by Abu Dhabi officials. *Id.* U.S Customs and Border Protection ("CBP") agents at the Preclearance location then separated the plaintiffs from one another and interrogated them for at least four hours. *Id.* Without a warrant or probable cause, the agents searched all electronic devices, including cell phones, and mishandled them in the process. *Id.* The food and spices in their luggage were searched and subsequently thrown away. *Id.* at 15. The minor children were not

---

[2] At the motion to dismiss stage, the Court must assume that all of plaintiffs' allegations are true. Therefore, the Court is taking all of the facts set forth below directly from plaintiffs' Complaint (ECF No. 1).

offered any food while in the CBP holding room, nor were they asked if they had any medical

conditions. *Id.* The family had to stay overnight in Abu Dhabi because they missed their

scheduled return flight to Los Angeles due to their detention by CBP officials. *Id.* When the

family returned to the airport the next day, their electronic devices were searched again, and the

extensive security measures involved a delay of at least one hour. *Id.*

Plaintiffs are Muslims with sincerely held religious beliefs that require traveling to Saudi

Arabia to complete Hajj and pilgrimage obligations. *Id.* Due to the extensive security screenings

they have undergone while traveling, they believe that they are being treated as persons on the

Selectee List (also known as the Terrorist Watch List). *Id.* The family believes that this treatment

burdens their religious exercise, and the minor children in particular felt that they were treated

like criminals, which has led to extreme emotional distress for all family members. *Id.*

On March 1, 2019, Mohammed Jibril and Aida Shahin initiated redress inquiries through

the DHS Traveler Redress Inquiry Program ("DHS TRIP") to acquire information as to why they

received scrutinized treatment when traveling and a way to appeal this treatment. *Id.* at 15-16.

On March 20, 2019, the other five members of the Jibril family also submitted TRIP complaints.

*Id.* at 16. On June 13, 2019, in response to Ala'a Jibril's DHS TRIP inquiry, DHS TRIP sent its

standard response letter for persons who are not on the No-Fly List but who could be on the

Selectee List, which states in part:

> DHS has researched and completed our review of your case. DHS TRIP can neither
> confirm nor deny any information about which you may be within federal
> watchlists or reveal any law enforcement sensitive information. However, we have
> made any corrections to our records that our inquiries determined were necessary,
> including, as appropriate, notations that may assist in avoiding incidents of
> misidentification.

*Id.* On July 2, 2019, DHS sent the same type of letters in response to Mohammed Jibril's and

Aida Shahin's TRIP complaints, and on July 23, 2019, DHS sent the same type of letters in

response to Khalid Jibril, Y.J., and O.J. *Id.* at 16-17. These standard responses did not confirm or

deny whether plaintiffs were on the Selectee List or if they can expect similar difficulties while

traveling in the future. *Id.* H.J. never received a response to his TRIP complaint. *Id.* at 17.

In addition to needing to travel overseas to fulfill their sincerely held religious beliefs and

the resulting obligations, the Jibril family wishes to travel to Jordan to see family in the near

future, as consistent with their prior travel patterns. *Id.* The Jibril family has routinely traveled to

Jordan every two to three years. *Id.* Mohammed Jibril has visited relatives in Jordan 12-15 times

over the past 25 years. *Id.*

Count I alleges that defendants Wolf, Pekoske, and Morgan violated plaintiffs' Fourth

Amendment rights by subjecting plaintiffs to unreasonable pat down searches and prolonged

detentions. *Id.* at 18-19. Count II alleges that defendants Wolf, Pekoske, and Morgan violated

plaintiffs' Fourth Amendment rights by conducting warrantless searches of their cell phones. *Id.*

at 19-20. Count III alleges that all defendants violated plaintiffs' Fifth Amendment Procedural

Due Process Rights. *Id.* at 20-22. Count IV alleges that defendants Wolf, Pekoske, and Morgan

violated the Administrative Procedure Act ("APA") due to detention conditions. *Id.* at 22-23.

Count V alleges that all defendants violated the APA due to lack of adequate procedural due

process through their policies and available administrative remedy. *Id.* at 23-24. Count VI alleges

that plaintiffs are entitled to attorneys' fees and costs under the Equal Access to Justice Act. *Id.*

at 24.

Plaintiffs ask this Court to grant the following relief: (1) Declare that defendants violated

plaintiffs' rights under the Fourth Amendment to the U.S. Constitution; (2) Declare that

defendants violated plaintiffs' rights under the Fifth Amendment to the U.S. Constitution; (3)

Declare that defendants' actions against plaintiffs constitute an abuse of discretion and,

accordingly, violate the APA; (4) Declare that defendants continuous actions against plaintiffs

are arbitrary and capricious and, accordingly, violate the APA; (5) Declare that defendants'

policies, practices, and customs, including but not limited to DHS TRIP, violate the APA and

Constitution, and fail to allow for a meaningful opportunity for persons like the plaintiffs to be

heard; (6) Order DHS TRIP to revise its policies to provide plaintiffs and persons like them with

a meaningful opportunity to challenge their apparent inclusion within the TSDB and/or Selectee

List; (7) Re-examine plaintiffs' DHS TRIP inquiries once DHS TRIP revises its procedures to

remove constitutional violations; (8) Enjoin defendants from conducting warrantless pat-down

searches of plaintiffs in the future, unless probable cause exists; (9) Enjoin defendants from

conducting warrantless searches of the plaintiffs' cell phones in the future, unless probable cause

exists; (10) Award plaintiffs attorneys' fees and costs as provided by any applicable provision of

the law, against defendants; and (11) Any additional relief this Court deems just, proper, and

equitable. *Id.* at 25-26.


## LEGAL STANDARD

Article III of the Constitution requires that plaintiffs establish standing before the Court

may consider the merits of the case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At

a minimum, standing requires an injury in fact, causation, and redressability. *Id.* It is plaintiffs'

burden to establish standing for each claim and form of relief sought. *Id.* at 561;

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Plaintiffs seeking prospective relief

must demonstrate a risk of future injury that is both "real and immediate," not "conjectural" or

"hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs therefore must

establish that a "threatened injury" is "certainly impending," or, at the very least, that the risk of

future harm is substantial. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

"[A]llegations of *possible* future injury are not sufficient." *Id.* at 409. If plaintiffs do not prove

that they have standing, the Court must dismiss the case pursuant to Rule 12(b)(1).[3]

## ANALYSIS

Plaintiffs in this case have failed to establish that they have Article III standing, and thus

Rule 12(b)(1) requires the Court to dismiss the case. There are two primary issues with plaintiffs'

standing argument. First, they have failed to show concrete plans to travel again in the immediate

future. Second, even if they do travel again in the immediate future, they have failed to

demonstrate that they will be subjected to the same extensive searches as on their 2018 trip.

Therefore, the Court lacks subject-matter jurisdiction over this case and must dismiss it in its

entirety.

## I. PLAINTIFFS HAVE FAILED TO ESTABLISH FUTURE TRAVEL PLANS THAT ARE CONCRETE AND IMMINENT.

Looking first at plaintiffs' argument that they will travel again in the future, they have

alleged the following pertinent facts:

- The Jibril family "need[s] to travel overseas to fulfill their sincerely-held religious beliefs and the resulting obligations." ECF No. 1 at 17.
- "[T]he Jibril family wishes to travel to Jordan to see family in the near future, as consistent with their prior travel plans." *Id.*
- "The Jibril family has routinely traveled to Jordan every two to three years." *Id.*
- "Plaintiff Mohammed Jibril, in particular, has visited relatives in Jordan 12-15 times over the past 25 years." *Id.*

---

[3] Although the parties present arguments regarding numerous other legal standards, it is not necessary to explain those standards in this Memorandum Opinion. Because plaintiffs have failed to establish Article III standing, the Court lacks subject-matter jurisdiction over this case. It would therefore be inappropriate for the Court to analyze other legal standards when only the details of Article III standing and Rule 12(b)(1) are necessary to resolve this motion.

Noticeably absent from the Complaint are any allegations of purchased airline tickets, what travel route they will take, how long they plan to travel for, or even any specific travel dates.[4] They vaguely assert that they would like to visit Jordan again "in the near future," but they do not attempt to provide any specific time frame within which that visit might occur. *Id.* The Jibrils argue that because they "routinely travel[] to Jordan every two to three years" and because Mohammed Jabril "has visited relatives in Jordan 12-15 times over the past 25 years," the Court may infer that they will return.[5] These allegations, however, are insufficient for plaintiffs to meet their burden to establish standing.

The Supreme Court has been abundantly clear that "threatened injury must be *certainly impending* to constitute injury in fact," or, at the very least, there must be a substantial risk of future harm. *Clapper*, 568 U.S. at 409. "[A]llegations of *possible* future injury are not sufficient." *Id.* In *Lujan*, the Supreme Court specifically ruled that in order to prove future travel plans, plaintiffs must provide a "description of *concrete* plans." 504 U.S. at 564 (holding that plaintiffs could not establish future harm when they merely alleged that they intended to travel again "in the future" but failed to provide any "current plans," specific dates, etc.) (emphasis added). Although the plaintiffs in this case have certainly provided more details than the plaintiffs in *Lujan*, they still fall short of the Article III threshold.

Plaintiffs cite numerous out-of-circuit cases in their attempt to convince this Court that their prior travel patterns are sufficient to show that they will certainly travel again in the future, but the D.C. Circuit has made it clear that allegations of "a harm that may occur 'some day,' with

---

[4] The Court is not saying that plaintiffs need to establish any or all of these factors in order to prove that their travel plans are concrete. Rather, these are some examples of the kinds of information that could have been included in the Complaint to demonstrate concrete travel plans.

[5] Even if the fact that Mohammed Jibril has visited Jordan 12-15 times in the past 25 years were sufficient to prove future travel plans, that fact certainly would not be sufficient to establish standing for the other six plaintiffs.

no 'specification of when the some day will be,' do[] not establish standing." *Kansas Corp. Comm'n v. Fed. Energy Regulatory Comm'n*, 881 F.3d 924, 930 (D.C. Cir. 2018). This Court is bound by prior rulings of the D.C. Circuit, not by prior rulings of other circuits, meaning that the Jibrils do not have standing unless they can show that their future plans are specific and concrete. *See, e.g.*, *Jefferson v. Stinson Morrison Heckler LLP*, 249 F. Supp. 3d 76, 81-82 (D.D.C. 2017) (finding that even though the plaintiff alleged that he would be returning to the defendant's law firm in the near future for depositions in an ongoing litigation, his plans were not sufficiently specific); *Baz v. United States Dep't of Homeland Security*, 2019 U.S. Dist. LEXIS 177575, \*12-13 (D.D.C. October 11, 2019) (finding that even if the plaintiff had alleged that he planned to travel in the "near future," that would not have been sufficient to establish a substantial likelihood of future injury). The D.C. Circuit has explained that disputes about "speculative" harms "are properly left to the policymaking Branches, not the Article III courts." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007). Additionally, the question of future travel plans goes beyond mere specificity. Plaintiffs must also show immediacy, which they have similarly failed to do. *See Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994) (explaining that the immediacy requirement "ensure[s] that the court in which suit is brought does not render an advisory opinion in 'a case in which no injury would have occurred at all'") (quoting *Lujan*, 504 U.S. 564 n.2). Therefore, the Jibril family has not only failed to establish specific and concrete future travel plans, but also imminent future travel plans.

Case 1:19-cv-02457-RCL   Document 11   Filed 05/09/20   Page 9 of 10

**II. PLAINTIFFS HAVE FAILED TO ESTABLISH A SUBSTANTIAL LIKELIHOOD THAT THEY WILL BE SUBJECTED TO UNLAWFUL SEARCHES DURING FUTURE TRAVEL.**

Even if the Complaint did sufficiently allege that the Jibril family has imminent, concrete travel plans, they still cannot show that future harm is certainly impending or that there is a substantial risk of future harm. The Jibrils attempt to argue that because they were subjected to extensive searches during their 2018 trip, they are substantially likely to be subjected to these same search measures again in the future. Although past harm is relevant to establishing the likelihood of future harm, past harm alone is insufficient. Of course, the Court must assume at the motion to dismiss stage that all of the plaintiffs' factual allegations are true, but the Court should not "accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986). To accept that plaintiffs will suffer future harm simply because they have stated in their Complaint that they will be subjected to these practices in the future would be to do just that.

As defendants aptly point out, plaintiffs' own allegations undermine their argument that they are substantially likely to be subjected to these extensive searches again in the future. In their attempt to establish likelihood of future travel, they allege that they routinely travel to Jordan every two to three years, and Mohammed Jibril alleges that he has traveled to Jordan 12-15 times over the past 25 years. In all of their travels, however, they claim to have been subjected to these searches only during their 2018 trip to and from Jordan. Even when drawing all reasonable inferences in plaintiffs' favor, this does not suggest that they are substantially likely to be injured again in the future. Mohammed Jibril claims to have visited Jordan 12-15 times, yet he alleges that extensive searches have occurred during only one of those 12-15 trips. All plaintiffs claim to have travelled to Jordan every two to three years, yet only on one trip have they encountered these difficulties. These statistics, without more, do not suggest that defendants

will subject plaintiffs to these supposedly unlawful searches in the future. The Jibril family's

contention that they will suffer these harms again is thus purely speculative and hypothetical.

Their allegations of past harms are insufficient to establish any sort of pattern that could lead this

Court to find a substantial likelihood of future repetition.[6] *See Reporters Committee for Freedom*

*of Press v. American Tel. & Tel. Co.*, 593 F.2d 1030, 1068-69 (D.C. Cir. 1978) (explaining that

plaintiffs are usually required to show "a clear factual foundation" establishing "a pervasive

pattern of past abuse" in order to prove that future harm is imminent). If the Court were to

proceed to the merits of this case, it would risk "render[ing] an advisory opinion in 'a case in

which no injury [will] occur[] at all.'" *Animal Legal Def. Fund, Inc.*, 23 F.3d at 500 (quoting

*Lujan*, 504 U.S. at 564 n.2). Therefore, plaintiffs have failed to establish standing as required by

Article III, and the Court must grant defendants' motion to dismiss.


### CONCLUSION

Based on the foregoing, the Court will **GRANT** defendants' motion to dismiss (ECF No.

8).

It will be **ORDERED** that this case is **DISMISSED** with prejudice.

A separate Order accompanies this Memorandum Opinion.


Date: May 9, 2020                                             /s/
                                                    Royce C. Lamberth
                                          United States District Court Judge


---

[6] The Court recognizes that a past pattern of harm is not the only way to prove imminent future harm. It is, however, the means that plaintiffs have attempted to use to prove that they are entitled to declaratory and injunctive relief.