UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMMED JIBRIL**, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>**ALEJANDRO MAYORKAS**, *et al.*,<br><br>    *Defendants.* | Case No. 1:19-cv-2457-RCL |

### MEMORANDUM OPINION

This case concerns the alleged placement of plaintiffs, the Jibril family, on a government-maintained terrorist watchlist, and the allegedly unlawful treatment they suffered at the hands of security officials on an international trip to Jordan in 2018 as a result. Plaintiffs filed suit in 2019 against various federal officers (together, "the government"), alleging violations of the Administrative Procedure Act ("APA") and various constitutional rights and seeking declaratory and injunctive relief. In 2020, this Court dismissed the complaint in full for want of subject-matter jurisdiction, holding that plaintiffs lacked Article III standing. On appeal, the Circuit affirmed in part, reversed in part, and remanded to this Court.

Before the Court on remand are Defendants' Renewed Motion [20] to Dismiss and Plaintiffs' Motion [24] for Leave to File an Amended Complaint. For the reasons that follow, the motion to dismiss will be **GRANTED**, the motion for leave to amend will be **DENIED**, and the case will be **DISMISSED** for lack of subject-matter jurisdiction.

### I. BACKGROUND

This Court and the Circuit have already explained the background of this case in detail in prior opinions. *See Jibril v. Wolf* ("*Jibril I*"), No. 19-cv-2457-RCL, 2020 WL 2331870, at *1–2 (D.D.C. May 9, 2020); *Jibril v. Mayorkas*, 20 F.4th 804, 808–12 (D.C. Cir. 2021). Accordingly,

1

the Court will provide only as much background here as is necessary to resolve the renewed motion to dismiss.

### A. Statutory and Regulatory Background

The Terrorist Screening Center ("TSC"), a multi-agency executive organization overseen by the Federal Bureau of Investigation ("FBI"), maintains a database known as the Terrorist Screening Dataset ("TSDS"). Overview of Government's Watchlisting Process and Procedures ("Watchlisting Overview") at 2, Ex. 1 to Defs.' Mot. to Dismiss, ECF No. 20-2. That dataset includes two subsets relevant here: the No Fly List and the Selectee List. *Id.* Pursuant to its statutory mandate to "assess" and "deal[] with threats to transportation," 49 U.S.C. § 114(f), and to utilize the No Fly List and Selectee List in doing so, *see id.* § 44903(j)(2)(C)(ii), the Transportation Security Administration ("TSA") prohibits individuals on the No Fly List from flying into, out of, or over the United States and subjects individuals on the Selectee List to enhanced screening before entering the secure areas of airports, Watchlisting Overview at 2. The government does not publicly disclose who is on either TSDS list, nor even the criteria for placement on the Selectee List. *Id.* at 4, 9.

The government has a policy against informing individuals of their placement on or removal from the Selectee List, although it does sometimes inform individuals of their placement on the No Fly List. *Id.* at 9. Regardless, any individual who "believes he or she has been improperly or unfairly delayed or prohibited from boarding an aircraft or entering a sterile area" because of placement on either list may submit an inquiry through the Department of Homeland Security's ("DHS") Traveler Redress Inquiry Program ("TRIP"). 49 C.F.R. § 1560.205(a), (b). The DHS TRIP program office forwards the inquiry to the TSC's Redress Office, which then reviews the traveler's record, if any, to determine whether the individual's status on either watchlist should be

2

modified. Watchlisting Overview at 8–9. When the inquiry is complete, DHS TRIP sends "a determination letter advising the traveler of the results of the adjudication of the redress inquiry," but still does not confirm or deny the traveler's status on the Selectee List. *Id.* Individuals who are not on the No Fly List, but who may be on the Selectee List, are therefore often unable to receive a response that meaningfully informs them of the results of their DHS TRIP inquiry.

### B. Factual Background

The Jibril family consists of husband and wife Mohammed Jibril and Aida Shahin and their five children: two adults named Ala'a Jibril and Khalid Jibril and three minors named H.J., Y.J., and O.J. Compl. ¶¶ 1–7, ECF No. 1. All seven are United States citizens. *Id.* ¶ 92.

In the spring and summer of 2018, the Jibrils traveled to Jordan to visit family. *Id.* ¶ 94. When the Jibrils went through security for their departing flight from Los Angeles, all seven, including the minor children, were searched and patted down for two hours. *Id.* ¶¶ 97–101. They were also interrogated for two hours upon arrival in Jordan. *Id.* ¶ 102.

When the Jibrils arrived at the airport for their return flight from Jordan, they were told by Jordanian officials "that American officials have an issue with [Mohammed Jibril] and that the family's names would need to be cleared prior to the family boarding the plane." *Id.* ¶ 104. Upon arriving for a layover in the United Arab Emirates, the family was interrogated for roughly 45 minutes by Emirati officials. *Id.* ¶ 106. They then endured an additional four hours of interrogation by U.S. Customs and Border Patrol ("CBP") officials "at the Preclearance location in Abu Dhabi." *Id.* ¶ 107. H.J. was interrogated by himself for some time without his parents. *Id.* ¶ 111. O.J. was left without his parents at multiple points during the family's detention. *Id.* ¶ 112. The CBP officials searched all the Jibrils' electronic devices, including their cell phones, without warrants. *Id.* ¶¶ 113–14. Because the ordeal lasted so long, the Jibrils missed their flight and had to stay in

Abu Dhabi overnight. *Id.* ¶ 118. When they returned to the airport, their phones were searched again. *Id.* ¶ 120.

On March 1, 2019, Mohammed Jibril and Aida Shahin, through counsel, initiated inquiries through the DHS TRIP program. *Id.* ¶ 126. On March 20, 2019, the couple's children, through the same counsel, initiated their own inquiry. *Id.* ¶ 127. In June and July of that year, DHS sent "standard response letter[s] for persons who are not on the No Fly List, but who could be on the Selectee List," to Mohammed Jibril, Aida Shahin, Ala'a Jibril, Khalid Jibril, and Y.J. *Id.* ¶¶ 135–37. None of those letters confirmed or denied whether the person referenced was on the Selectee List. *Id.* O.J. received a slightly different letter additionally stating that "[y]our experience was most likely caused by a misidentification against a government record or by random selection." *Id.* ¶ 137 n.13. As of the date of the complaint, H.J. had never received a determination letter. *Id.* ¶ 138.

### C. Procedural History

The Jibrils filed suit in this Court against the Secretary of Homeland Security and various other federal officers on August 13, 2019. *See* Compl. The complaint alleged six counts: (1) violation of the Fourth Amendment right against unreasonable searches and seizures through detentions and pat-downs, *id.* ¶¶ 146–54; (2) violation of the same right through warrantless cell phone searches, *id.* ¶¶ 155–163; (3) violation of the Fifth Amendment right to due process through placement on the Selectee List and inadequacy of DHS TRIP procedures as a remedy, *id.* ¶¶ 164–79; (4) violation of the APA due to detention conditions, *id.* ¶¶ 180–93; (5) violation of the APA due to placement on the Selectee List and inadequacy of DHS TRIP procedures as a remedy, *id.* ¶¶ 194–200; and (6) a claim for an award of attorneys' fees under the Equal Access to Justice Act

("EAJA"), *id.* ¶¶ 201–03. Apart from the award of attorneys' fees, the complaint sought only declaratory and injunctive relief. *Id.* Prayer for Relief ¶¶ 1–9.

On November 25, 2019, the government filed its first motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. ECF No. 8. The Court granted that motion on May 9, 2020, holding that the Jibrils lacked standing—and thus the Court lacked subject-matter jurisdiction—because they had not established that they would likely experience a similar travel ordeal in the future. *Jibril I*, 2020 WL 2331870, at *3–5. Specifically, the Court reasoned that the Jibrils did not adequately allege concrete future travel plans, *id.* at *3–4, and that given the Jibrils' extensive history of traveling to Jordan with only one trip going awry, any future threat of similar treatment on a hypothetical future trip was speculative, *id.* at *4–5.

On appeal, the Circuit affirmed in part, reversed in part, and remanded to this Court. *Jibril II*, 20 F.4th at 817. The Circuit reasoned that the Jibrils alleged a likelihood of future travel given that they have in the past traveled to Jordan every two years, *id.* at 814–15, and that, with respect to most of their claims, they adequately alleged a likelihood of similar treatment in the future because they alleged facts giving rise to a reasonable inference that they were on the Selectee List, which necessarily triggers enhanced screening measures when traveling, *id.* at 815–17. However, the Circuit affirmed this Court's dismissal of the Jibrils' claims insofar as they challenged the patting down of minor children and separation of those children from their parents, because the complaint alleged that the TSA had a policy of minimizing those practices, and thus it was unlikely that they would recur even if the Jibrils were subject to enhanced screening in the future. *Id.* at 813.

On remand, the government filed a renewed motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim on April 28, 2022. ECF No. 20. In support of that motion,

5

the government submitted to the Court for *ex parte, in camera* review an affidavit of FBI Special Agent and TSC Associate Deputy Director Samuel P. Robinson, a redacted version of which it also filed on the public docket. *See* Not. of Lodging, ECF No. 21; Redacted Decl. of Samuel P. Robinson, Ex. 2 to Defs.' Mot. to Dismiss, ECF No. 20-3. In the government's view, Agent Robinson's declaration establishes a separate reason, which neither this Court nor the Circuit has yet had occasion to consider, why the Jibrils lack standing to bring any of their claims. The Jibrils filed their opposition to the renewed motion to dismiss, along with an alternative motion to amend the complaint to seek nominal damages, on May 26, 2022, ECF Nos. 23, 24, and a supplemental opposition brief on June 28, 2022, ECF No. 30. The government filed its reply on July 8, 2022. ECF No. 31. The renewed motion to dismiss and the motion to amend are now ripe for review.

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1) Motions and Article III Standing

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and "a court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim," including to "resolve factual disputes concerning jurisdiction." *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (K.B. Jackson, J.) (internal quotation marks and citations omitted).

One way a court might lack subject-matter jurisdiction is if a plaintiff lacks Article III standing. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). The plaintiff bears the burden

of establishing standing by demonstrating (1) a concrete injury in fact that is (2) traceable to the complained-of conduct and (3) redressable by the relief sought. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Furthermore, "[i]n a case of this sort, where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing," *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011), and "a threatened injury must be 'certainly impending' or there has to be a 'substantial risk that the harm will occur,'" *Union of Concerned Scientists v. Dep't of Energy*, 998 F.3d 926, 929 (D.C. Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Relatedly, a court lacks subject-matter jurisdiction if a case becomes moot—that is, if "[t]he requisite personal interest that must exist at the commencement of the litigation (standing)" does not "continue through its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks and citation omitted). The defendant, not the plaintiff, "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022). A notable exception to the doctrine of mootness exists where "[t]he only conceivable basis for a finding of mootness in [the] case is [the defendant's] voluntary conduct." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "'[V]oluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *West Virginia*, 142 S. Ct. at 2607 (alteration added) (quoting *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007)).

### B. Rule 12(b)(6) Motions

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive

a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, . . . nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citation omitted).

### C. Motions to Amend a Complaint

A plaintiff may amend a complaint as a matter of course 21 days after serving it or 21 days after service of a responsive pleading or motion under Federal Rule of Civil Procedure 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Thereafter, a plaintiff may amend a complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although courts should grant such leave freely when justice so requires, *id.*, "[a] court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss," *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002).

### III. DISCUSSION

The government moves to dismiss the complaint on the ground that, based on facts relayed in its *ex parte* submission, the Jibrils lack standing to pursue any of their claims, and thus the Court lacks subject-matter jurisdiction. *See* Def.'s Mem. in Support of Mot. to Dismiss at 13–15 ("Mot.

to Dismiss Mem."), ECF No. 20-1.[1] In the alternative, the government moves to dismiss all claims on the merits for failure to state a claim. *See id.* at 16–31. In addition to defending their claims on the merits, *see* Pls.' Opp'n to Mot. to Dismiss at 20–37, ECF No. 23, the Jibrils argue that *ex parte, in camera* review is inappropriate, *see id.* at 18, that what they believe to be in the *ex parte* submission—a statement that the Jibrils are not on the watchlist—does not in fact deprive the Court of subject-matter jurisdiction because the voluntary cessation doctrine applies, *see id.* at 14–17, and that at the very least they have standing to challenge the government's broader watchlisting and DHS TRIP policies, *see id.* at 15–16. In the alternative, the Jibrils move for leave to amend their complaint to cure any problem with standing to pursue prospective relief by adding a request for nominal damages, a retrospective form of relief. *See id.* at 37–39.

Based on its *ex parte, in camera* review of the government's submission, the Court agrees with the government that the Jibrils lack standing and the Court therefore lacks subject-matter jurisdiction. Accordingly, the Court has no occasion to consider the merits of the government's Rule 12(b)(6) motion. The Court further concludes that amending the complaint as the Jibrils propose would be futile, because the government has not waived its sovereign immunity with respect to the nominal damages the Jibrils would seek.

### A. The Jibrils Lack Standing to Pursue Any of their Claims

The government now argues as a factual matter, independently from the reasons it relied on in its first motion to dismiss, that the Jibrils lack Article III standing to pursue their remaining claims on remand. It does so on the basis of an *ex parte* submission to the Court for *in camera*

---

[1] The government also argues that the Court lacks subject-matter jurisdiction to review the Jibrils' due process clause claim and their coextensive APA claim because 49 U.S.C. § 46110 gives the Courts of Appeals exclusive jurisdiction to review orders issued "in whole or in part" by the TSA. *See* Mot. to Dismiss Mem. at 15–16. But as the government acknowledges, the Circuit has held that § 46110 does not apply to challenges to the TSC-administered watchlisting process, *see Ege v. Dep't of Homeland Security*, 784 F.3d 791, 795–96 (D.C. Cir. 2015), and this Court is bound by that precedent.

9

review. The government argues that national security concerns justify *in camera* review of that *ex parte* submission, as well as keeping its contents secret. The Court reluctantly agrees.

"*Ex parte, in camera* resolution of dispositive issues should be avoided whenever possible." *Ellsberg v. Mitchell*, 709 F.2d 51, 69 n.78 (D.C. Cir. 1983). However, it is permissible in certain extraordinary circumstances implicating national security concerns. *See, e.g., Jifry v. FAA*, 370 F.3d 1174, 1181–82 (D.C. Cir. 2004). On that ground, at least some district courts have conducted *in camera, ex parte* review of submissions involving the TSDS and potentially revealing plaintiffs' placement on or removal from that list. *See Nur v. Unknown CBP Officers*, No. 22-cv-169-AJT, 2022 WL 16747284, at *6–7 (E.D. Va. Nov. 7, 2022); *Kovac v. Wray*, No. 3:18-cv-110-X, 2022 WL 717260, at *1–4 (N.D. Tex. Mar. 10, 2022).

This Court has serious misgivings about allowing the government to rely on information that it refuses to disclose to the Jibrils to have their case dismissed. It seems only fair if the Court is to dismiss this case that the plaintiffs and their counsel, who have expended great effort and resources litigating it at multiple levels of the court system, should know the basis for the Court's reasoning. Moreover, the Court is reluctant to indulge what almost seems to be a sick sense of delight the government has taken in withholding from the Jibrils information that is key to the resolution of a jurisdictional question in their case, with government counsel suggesting at oral argument before the Circuit that "if the Jibrils would like to determine whether they remain on a terrorist watchlist, some or all members of the family can book another trip to see whether they endure the same problems that they faced in 2018." *Jibril II*, 20 F.4th at 817.

Nevertheless, the Court has an "independent obligation" to assure itself that it has subject-matter jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Based on the information the government has submitted *ex parte*, the Court sees no conceivable way that the Jibrils could

10

demonstrate that they have standing, even with a full opportunity for adversarial testing of the government's position. Furthermore, the government has explained at length in its *ex parte* submission, and to some extent in the redacted, public version of the same document, *see* Redacted Robinson Decl. ¶¶ 25–26, 28–32, why, in general, disclosure of an individual's status on the Selectee List might pose a threat to national security, especially by facilitating circumvention of law enforcement and national security investigations. While the government has not entirely explained why that concern would exist in this particular case, particularly with respect to the plaintiffs who are minor children, the Court recognizes that sometimes courts must keep private highly sensitive information that could compromise the executive's exercise of ongoing national security duties. Accordingly, the Court will grant the government's request that the Court conduct an *ex parte*, *in camera* review of the materials submitted and will endeavor to explain its reasoning as clearly as possible without expressly confirming or denying any individual's status on the Selectee List.

If, hypothetically, Mohammed Jibril were placed on the Selectee List but his family members were not, the other Jibrils would lack standing to seek prospective relief on any of their claims for that reason alone, unless they could adequately allege concrete future plans to travel with him in particular. It is conceivable given the Circuit's reasoning in *Jibril II* that the other Jibrils could make that showing. However, that would not be enough to survive a motion to dismiss for lack of subject-matter jurisdiction if their intended travel partner were no longer on the Selectee List himself.

If, hypothetically, Mohammed Jibril were placed on the Selectee List prior to the family's 2018 trip to Jordan and subsequently removed from that list after initiating his DHS TRIP inquiry but prior to the filing of the complaint, the Jibrils would lack standing to seek prospective relief

11

because they could not demonstrate a substantial risk of future injury. In that case, standing, not mootness, would be the proper framework for evaluating the problem with subject-matter jurisdiction, because standing is judged at the filing of the complaint and mootness is judged during the pendency of the action. *See Arizonans for Official English*, 520 U.S. at 68 n.22. And if the government satisfied the Court with an affidavit given under penalty of perjury that it would not add Mohammed Jibril back to the Selectee List unless new information provided a reason for doing so, any apprehension that the Jibrils might be subjected to similar enhanced screening measures on a future trip (Counts I, II, and IV), or have any reason to make further attempts to contest their potential watchlist status (Counts III and V), would depend on the hypothetical possibility that the government might receive new information in the future convincing it that Mohammed Jibril once again met the criteria for inclusion on the Selectee List. Without a way of demonstrating that "a threatened inquiry [was] 'certainly impending' or there [was] a 'substantial risk that the harm will occur,'" the Jibrils would be unable to meet their burden of establishing standing. *Union of Concerned Scientists*, 998 F.3d at 929 (quoting *Susan B. Anthony List*, 573 U.S. at 158).

The Jibrils argue that removal from the Selectee List at least would not affect their standing to bring their due process and APA challenges to the "policy itself"—that is, the DHS TRIP procedures for redressing one's possible placement on the Selectee List—because "singular relief on one aspect of a claim does not moot the party's challenge to that policy or practice as a whole." Pls.' Opp'n at 16. But both cases they cite for that proposition are inapposite here. In *Cause of Action Inst. v. Dep't of Justice*, the Circuit held that its own conclusion that the Department of Justice ("DOJ") violated the Freedom of Information Act ("FOIA") in the plaintiff's case did not moot that plaintiff's more general challenge to DOJ's FOIA procedures, because "[i]t is generally understood that 'even though a party may have obtained relief as to a *specific request* under the

FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future.'" 999 F.3d 696, 703–04 (D.C. Cir. 2021) (alterations in original) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)). But the Circuit also made clear that "to pursue its challenge to the [agency's FOIA policy] once its request for specific relief is no longer at issue, [the plaintiff] must still demonstrate standing to challenge the disputed policy or practice." *Id.* at 704. The plaintiff in *Cause of Action Inst.* met that bar because it had "additional FOIA requests pending with DOJ" and thus was "at risk of receiving the same improper treatment in the future." *Id.* (internal quotation marks omitted). Similarly, the Supreme Court held in *Super Tire Engineering Co. v. McCorkle* that when a plaintiff challenges a policy, "[i]t is sufficient" for mootness purposes "that the litigant show the existence of [a] . . . policy that has adversely affected and *continues to affect* a present interest." 416 U.S. 115, 125–26 (1974) (emphasis added).

Those cases would not help the Jibrils if any family member who was ever on the Selectee List were removed. Even setting aside the fact that the cases are about mootness rather than standing, there would be no agency policy "continu[ing] to affect a present interest" asserted in the complaint. *Id.* at 126. And under the proper framework of standing, any risk of future harm to the interests the Jibrils assert would not be "sufficiently imminent and substantial" to supply standing to seek prospective relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021).

The Jibrils' due process and APA challenges to the DHS TRIP program do not allege that it is that program that deprives them of a protected liberty or property interest without due process. Rather, those challenges allege that the DHS TRIP program is a constitutionally inadequate process for a deprivation effected by their alleged placement on the Selectee List. *See* U.S. Const. amend. V. The Jibrils allege that the government has deprived them, and continues to deprive

13

them, of a protected liberty interest within the meaning of the due process clause by "chilling" their exercise of their right to travel and to freely practice their religion. *See* Pls.' Opp'n at 22–23 ("Although future travel will happen, the Jibril family members' experiences had a significant chilling effect on their willingness to travel and sense of well-being while doing so."); *id.* at 24 ("[The Jibrils] allege that [their] belief [in making a pilgrimage to Mecca] is burdened by the government's policies and actions of placing the entire family on a Terrorist Watchlist, making it difficult . . . to travel or attempt to travel."). They also argue that the government has deprived them, and continues to deprive them, of a protected reputational interest by disseminating their alleged placement on the Selectee List to government officials and potentially private institutions, and by making that alleged placement apparent to fellow travelers at airports who may witness the enhanced screening measures in application—a so-called "stigma-plus" claim. *See id.* at 25–28.

Even if the interests cited by the Jibrils amount to constitutionally protected liberty interests, the alleged injuries to those interests would be ongoing only if the Jibrils were in fact currently on the Selectee List. And if the Jibrils were not on the Selectee List, they would have standing to seek prospective relief only if they could demonstrate a "sufficiently imminent and substantial" risk of being added to it in the future. *TransUnion*, 141 S. Ct. at 2210. Put more concretely, the Jibrils would not be subjected to enhanced screening, listed as suspected terrorists, or pulled out of line in front of other travelers because of the Selectee List if none of them were on the Selectee List. And if the challenged policy did not continue to injure the Jibrils, nor could they demonstrate a substantial likelihood that it would injure them again in the future,[2] they would not have standing to challenge that policy.

---

[2] As noted above, although it is the defendant who bears the burden of establishing that a case has become moot during its pendency, it is the plaintiff who bears the burden of demonstrating that standing exists at the filing of the complaint. *West Virginia*, 142 S. Ct. at 2607. For that reason, if standing were the proper framework, the cases that the parties

That conclusion is entirely consistent with the Circuit's reasoning in *Jibril II*. Noting that "the Jibrils allege facts supporting the conclusion that they appeared on the Selectee List during their 2018 travels," the Circuit "simply [drew] the reasonable inference from those facts that this remains the case today, particularly since the Government has provided no evidence to the contrary." *Jibril II*, 20 F.4th at 816–17. If the government provided evidence that satisfied this Court that no member of the family is now on the Selectee List, nor is there any reason they should be added to that list absent some future development, that inference would no longer be reasonable, and the Jibrils could not "adequately allege an imminent threat of future injury for those claims challenging the Government's policies and the alleged lack of adequate redress process." *Id.* at 817.

The Court regrets that in granting the government's request not to expressly confirm or deny the contents of the *ex parte* submission, it must leave the Jibrils in the dark as to precisely on what factual basis their case will be dismissed for a second time. But based on the Court's *in camera* review of that submission and the legal principles outlined above, the Court concludes that none of the Jibrils have standing to pursue any of their claims for declaratory and injunctive relief. Because the Court lacks subject-matter jurisdiction over any of the Jibrils' claims, it has no occasion to consider whether the complaint also fails to state a claim upon which relief can be granted.

---

cite concerning application of the voluntary cessation exception to mootness to an affidavit promising that a plaintiff would not be added back to a TSDS watchlist would not provide a helpful analog. *See Fikre v. FBI*, 35 F.4th 762, 770–73 (9th Cir. 2022); *Long v. Pekoske*, 38 F.4th 417, 422–26 (4th Cir. 2022). Unlike in those cases, it would not be incumbent on the government to make "absolutely clear that the allegedly wrongful behavior" of returning a plaintiff to a watchlist "could not reasonably be expected to recur." *West Virginia*, 142 S. Ct. at 2607 (quotation marks and citation omitted).

15

### B. Amending the Complaint Would Be Futile

As an alternative to their opposition to the government's motion to dismiss, the Jibrils move for leave to amend their complaint to seek nominal damages, based on the Supreme Court's recent holding in *Uzuegbunam v. Preczewski* that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." 141 S. Ct. 792, 802 (2021); *see* Pls.' Opp'n at 37–39. That proposed amendment would be futile. While the Jibrils might theoretically have standing to pursue retrospective, monetary relief to redress the alleged injuries they suffered during their 2018 trip to Jordan, they have not identified a waiver of sovereign immunity that would allow them to pursue claims for monetary damages against the government.[3] The APA's waiver of sovereign immunity does not apply to suits for "money damages," 5 U.S.C. § 702, including nominal damages, *see Leonard v. Dep't of Defense*, 38 F. Supp. 3d 99, 104 n.2 (D.D.C. 2014). Because "the proposed complaint would not survive a motion to dismiss," the Court will "deny as futile [the Jibrils'] motion to amend [their] complaint." *Robinson*, 211 F. Supp. 2d at 114.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the government's motion to dismiss for lack of subject-matter jurisdiction, **DENY** the Jibrils' motion to amend the complaint, and **DISMISS** the case. A separate Order shall issue this date.

Date: February 27, 2023

Royce C. Lamberth
United States District Judge

---

[3] Although the defendants are all individual federal officers, the proposed amended complaint names them in their official capacities. *See* Proposed Am. Compl. ¶¶ 9–13. The Jibrils' claims must therefore be treated for purposes of sovereign immunity as claims against the United States. *See Zaidan v. Trump*, 317 F. Supp. 3d 8, 21 (D.D.C. 2018).